Carl H. Smith, Sr. and Bessie Dawson Smith v. Commissioner.
Carl H. Smith v. Commissioner
Docket Nos. 19869, 24663.
United States Tax Court
1950 Tax Ct. Memo LEXIS 109; 9 T.C.M. (CCH) 726; T.C.M. (RIA) 50205; August 31, 1950
*109 Held: deductions for capital loss carry-over in 1945, 1946, and 1947 disallowed for failure of proof that a loss was sustained in the sale of property in 1943. Carl H. Smith, II, Esq., for the petitioners. J. R. Hambrick, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined deficiencies in the petitioners' income tax liabilities as follows: Year
Docket No.
Deficiency
1945
19869
$231.16
1946
19869
190.76
1947
24663
173.03
The issues are whether the petitioners sustained a loss on the sale of real property in 1943 and, if a loss was sustained, whether it was a capital or ordinary loss. The case was presented on oral testimony and exhibits. Findings of Fact Petitioners, Carl H. Smith, Sr. and Bessie Dawson Smith, are husband and wife and reside at 2823 28th Street, N.W., Washington, D.C. For the calendar years 1945, 1946 and 1947, petitioners filed joint income tax returns with the collector of internal revenue for the 8th district of Illinois. Prior to July 1921, Carl H. Smith, Sr. and one Rolla R. Dawson, purchased two adjacent lots on Pine Street in the City of Sesser, *110 Illinois. Smith and Dawson each owned an undivided one-half interest in the lots. In November 1921, the construction of a two-story brick store building on one of these lots was completed. Smith and Dawson contributed substantially equal amounts to the cost of the construction of this building. This property was located in the business district of Sesser and the building was of a type suitable primarily for business use as a store. Following the completion of the store building in November 1921, it and the adjacent lot were used in the conduct of a retail furniture and hardware business known as Dawson-Smith Furniture Company. From 1921 to 1932 this business was conducted as a partnership composed of Smith, Dawson and one Abner Duncan. In a financial statement dated September 2, 1924, submitted by the partnership to the First National Bank of Sesser, the combined value of the store building and the two lots was listed as $25,250. In a financial "report" of the partnership dated August 25, 1922, the building was valued at $21,000 and the two lots at a total of $3,250. This latter "report" states that title to the property was in the name of "Dawson-Smith Furniture Company." None *111 of this property was ever carried on the books of the partnership. In 1932 Dawson and Duncan withdrew from the partnership and the business conducted by it. When Dawson terminated his interest in the business, Bessie Dawson Smith acquired his undivided one-half interest in the real property. From 1932 to 1938 the business was owned and operated by the petitioners. In 1938 the petitioners discontinued the operation of the business and disposed of the merchandise and most of the fixtures used therein. Thereafter, the petitioners did not reengage in the retail furniture and hardware business and did not carry on any other business on the premises. The building was used for a time after 1938 to store some office equipment for which Smith and his son believed they might have some later use. The building was kept in a reasonable state of repair. Since 1935 Smith has been in the employ of the United States Government. The petitioners did not attempt to sell or rent the property formerly used in the business until late in 1942. No effort was made to sell the property because petitioners did not think they would be able to get a satisfactory price. On November 30, 1942, the petitioner, *112 Bessie Dawson Smith, gave Herbert and Dolph Hoorebeke an option in writing to purchase the property on or before April 15, 1943. No price was stated in the document. The option agreement form titled "BOND FOR DEED" contained the following hand-written clause: [The property will be conveyed] subject to all back taxes as of this date, November 30, 1942." This was the first opportunity the petitioners had to dispose of the property after it was placed for sale in the latter part of 1942. Pursuant to the option agreement petitioners conveyed the property to the Hoorebekes during the first week of February 1943. The total cash consideration received by the petitioners for the property was $3,400. The property was used by the purchasers in the conduct of an automobile and parts business. The records of the Assessor and the Collector in the county in which the property is located indicate that the values placed on the property, including the building, were $4,025, $1,840 and $1,130 in the years 1922, 1932 and 1943, respectively. Petitioners filed a joint return for the calendar year 1943. An amended joint return for 1943 was filed by petitioners in 1946. The sale of the real estate *113 was reported as a long-term capital loss in the two returns, as follows: Deprecia-
Gross
Cost or
tion
Loss
Date
Date
sales
other
allow-
taken into
Description of property
acquired
sold
price
basis
ance
Loss
account
Original return
Business property lot 1 and E. 1/2 of lot
2 original plat City of Sesser, Ill.
11/19/21
2/8/43
$3,400
$23,000
$4,600
$15,000
$7,500
Amended return
Business property lot 1 and E. 1/2 of lot
2 original plat City of Sesser, Ill.
11/19/21
2/8/43
3,400
27,100
9,870
13,830
6,915
In the original return for 1943 the petitioners deducted $7,500 in computing their net income as a net loss on the sale of a capital asset. In the amended return for 1943 petitioners computed the loss at $6,915 and deducted $1,000. In each of the returns for 1945, 1946 and 1947, $1,000 was deducted as a "carry over" of the alleged loss in 1943. The respondent disallowed these deductions, holding also that if any loss was sustained by the petitioners in 1943 it was an ordinary loss, not a capital loss. Opinion VAN FOSSAN, Judge: The respondent contends, first, that the petitioners' proof *114 fails to substantiate petitioners' claim that a loss was sustained in 1943, such proof being a prerequisite of the deduction of a carry over capital loss in the taxable years. We agree. Apparently, at the time the building was completed in 1921, the petitioner, Carl H. Smith, Sr., owned a one-half interest in this property and the other one-half was owned by his brother-in-law, Dawson, who was also a partner of Smith in the furniture business. A second brother-in-law, named Duncan, was also stated to have been a partner in business with petitioner Smith but what became of him or his interest does not appear. The cost of the land and building was never carried on the books of the business although in two financial reports made by the partnership a value was stated. Smith testified that his wife acquired Dawson's one-half interest in this property in 1932 for "something like $12,000." The respondent suggests that part of this $12,000 was in reality a purchase by Smith's wife of Dawson's share in the partnership. The record justifies this view. Although the amount of $12,000 is approximately one-half of the alleged cost of the building and land, we can not overlook the fact that 11 *115 years later, in 1943, petitioner testified they sold the entire property for $3,400. No proof was supplied which explains this wide divergence in prices. Petitioners argue that this depreciation in value was entirely possible in the community where the property is located. They offer in evidence the valuation placed on the property by the County Assessor's and Collector's books for the years 1921 to 1943. In our opinion, petitioners gain nothing and lose much by this proof. If the sale of a one-half interest in the property to Smith's wife for $12,000 was an arm's length transaction, then the values in the Assessor's and Collector's books tend to discredit petitioners' claim of cost. These books show that the assessed value of the property, with improvements, was $4,025 in 1922, $1,840 in 1932 and $1,130 in 1943. No proof was made to show the ratio of the Assessor's figures to market values. The petitioners argue that these records show merely that property values declined in this location during the years from 1922 to 1943. Although there is frequently a considerable variance between assessed values and cost or market values of property, the divergence here noted is so great that *116 it cannot be reconciled with the alleged payment of $12,000 for a one-half interest in the realty. Unless it represented the purchase of a one-half interest in the entire business, and not merely the land and building, the disparity is beyond our belief. Under the circumstances, respondent's contention that part of the $12,000 was in payment for something other than the real property, viz., Dawson's interest in the partnership, seems to be well justified. Petitioner testified that Dawson withdrew from the firm in 1932 and that he and his wife owned it thereafter. The petitioner made no attempt to prove a basis for Mrs. Smith, who apparently in some manner became a co-owner with Smith in the entire venture, but had a different cost basis. Petitioner's recollection of the facts and figures was so hazy and apparently unreliable, that we can give little credence to his testimony where uncorroborated. Faced with so many shortcomings of proof, we are unable to find either the original cost to petitioners of the land and building or to hold that Bessie Dawson Smith paid $12,000 for a one-half interest in such property. Thus petitioners, on whom rested the burden of proof, have failed to carry *117 their burden. The respondent further contends, conceding that the total cash consideration received by the petitioners was $3,400, that the statement in the option agreement that the conveyance was "subject to all back taxes as of this date, November 30, 1942" implies that the purchasers assumed the taxes due, resulting in an addition to the purchase price received by the petitioners. There is no evidence to clear up this situation. Petitioners argue that the allowance by the respondent of a claim in the petitioners' return for 1943 for taxes in the amount of $230.63 paid on real estate in Sesser, Illinois, showed there were no accrued taxes on the property and that $3,400 was the total consideration received. The fact that the respondent allowed the deduction, standing alone, proves nothing. Petitioners should have negatived the existence of unpaid taxes. The only evidence bearing on the sale of the property itself is an option agreement or "Bond for Deed" which, while made in the penal sum of $1,200, does not recite the purchase price. There is another puzzling aspect to the transaction. By the terms of the option agreement Bessie Dawson Smith, the wife, was to convey the entire *118 property, not only her interest. Although this agreement was signed by both petitioners, it seems to indicate that the wife had somehow gained legal title to the entire property. Otherwise the question of how she was capable of contracting to convey her husband's interest in the property is unanswerable. Likewise unexplained is the fact that the 1922 financial report showed the title to the property to be in Dawson-Smith Furniture Company. The records before us and the circumstances surrounding the transaction fail to convince us that we have heard the entire story. In our opinion, the record made fails to substantiate a claim that a loss was sustained on the sale of the property, and we so hold. The decision in this respect is dispositive of the case and there is no need to discuss subordinate questions. Decisions will be entered for the respondent.